### In re TAMPA ELECTRIC COMPANY.
No. 6240-EU.

Railroad & Public Utilities Commission.

February 2, March 6 and April 19, 1961.

D. Fred McMullen of Ausley, Ausley & McMullen, Tallahassee, and Sam Buckley of Buckley, Ramsey & Phillips, Tampa, for Tampa Electric Company.

Hugh C. Macfarlane of Macfarlane, Ferguson, Allison & Kelly, Tampa, for Davison Chemical Co. and Florida Portland Cement Division of General Portland Cement Co., intervenors.

William A. McRae, Jr. of Holland, Bevis, McRae & Smith, Bartow, for American Agricultural Chemical Co., American Cyanamid Co., Armour Agricultural Chemical Co., Coronet Phosphate Co., Royster Guano Co., International Minerals & Chemical Corp. and Virginia-Carolina Chemical Co., intervenors.

Lewis W. Petteway, general counsel for the commission, on behalf of the commission's staff and in the general public interest.

Chairman JERRY W. CARTER, Commissioners WILBUR C. KING and EDWIN L. MASON participated in the disposition of this matter.

BY THE COMMISSION.

*Order, February* 2, 1961: On November 8, 1960 this commission gave thirty days' formal notice that it would hold a public hearing in the city of Tampa for the purpose of receiving and considering the testimony of all interested parties concerning the need for a lower and more reasonable electric rate for industrial customers of Tampa Electric Company and the possible need for an increase in residential and small commercial rates to compensate for revenue losses that might accrue to the utility from its proposed reduction in industrial rates.

Notice of the public hearing was given unusually wide distribution. It was served by United States mail on the mayors and chambers of commerce of every city, town and community served by Tampa Electric Company; on the chairman of the board of county commissioners in each county served by said utility; on each senator and representative in the state legislature for each county served by the electric company; on regional and local public housing authorities in the area involved; on the Associated Press, the United Press, the Tampa Tribune News Bureau, and other news agencies in said territory; on representatives of the Hillsborough County Council of Civic Clubs, the Hillsborough County Council of Home Demonstration Clubs, the East Point Civic Club of East Tampa, the Temple Terrace Civic Association, the Drew Park Civic Club in Tampa, and a designated spokesman of a special electrical committee of homeowners in the city of Temple Terrace, on the Florida State Chamber of Commerce, on the

Florida State Retailers Association in Winter Haven, and on many others who have previously requested notices of all commission hearings.

A public hearing was held at the time and place specified in the notice and the commission heard all the testimony that was offered by any person. Several witnesses testified for various phosphate concerns. One witness testified for a concrete manufacturing company. The president of Tampa Electric Company testified concerning the company's problems in attracting new industry to the area because of his company's high industrial electric rates. A representative of Stone and Webster Service Company testified as to the results of a study of the utility's cost of serving its various classes of customers. A representative of the Tampa Chamber of Commerce testified concerning the economic dependence of the Tampa Bay area on industrial development and the necessity for an attractive industrial electric rate if that area was to continue to hold its present industries and attract new ones. But no one appeared as a residential or small use customer, or in their behalf, to register any opposition to the company's proposed readjustment in its electric rates.

On the basis of the sworn testimony which was presented at the hearing the commission issued its order #3078 on December 29, 1960 authorizing the company to reduce its industrial rates and make compensating increases in its residential and small commercial rates so that its various customers might bear a more equitable share of the utility's service costs.

After order #3078 was issued the commission began receiving letters of protest. By far the vast majority of these letters were printed or mimeographed form letters which contribute little or nothing to the fair and reasonable solution of a difficult problem. Some letters came from labor organizations and other groups expressing individual and independent views of the problem. Most of the letters of protest give the impression that someone is seeking a rehearing in this matter and endorse such a move. At the same time, we have had many letters complimenting the commission on its order and requesting that no rehearing be granted. However, no one has filed with the commission anything that could be classified as a petition for rehearing under the commission's rules of practice and procedure which were adopted after public hearings and which are on file with the secretary of state as required by law.

Too few people assuming to act in a representative capacity, and to speak for the masses, take the time to familiarize themselves with the proper procedure to be followed in matters of this

kind and jeopardize the position and rights of those they would represent by failing to take the necessary steps within the time allowed by applicable rule. They refuse to recognize that an agency such as this is limited by statutes which prescribe that it shall be bound by the same rules of evidence, for example, that apply to the circuit court. Some who presume to speak for the public in this matter have had considerable experience in the practice of law and in legislative service but have completely failed to furnish the commission with any legal or resonable basis for reconsidering its action in this case.

Neverthless, this commission is committed to the principle that the public shall always have an opportunity to understand how it may be affected by commission action and to be heard with reference to such proposed action. While there is nothing pending before the commission upon which we could enter an order granting a rehearing which would stand up in court if subjected to judicial attack, we are conscious of the fact that there exists in the Tampa Bay area considerable confusion, misunderstanding, and dissatisfaction concerning the rate adjustment authorized by our order #3078 entered on December 29, 1960, and we intend to see that the public, now that it understands the issues, has an opportunity to be heard even though it failed to avail itself of an earlier opportunity, and even though no one has filed a proper petition for rehearing.

As we have said, we cannot grant a rehearing in this matter at this time on the basis of anything presently before the commission. However, on our own motion, we are going to cause a public hearing to be held in the city of Tampa, commencing at 9:30 A.M., March 15, 1961, in this docket for the purpose of hearing and considering such relevant evidence as may be offered by any interested party on the question whether the commission should reconsider order #3078 and, if so, what level of rates should be approved by the commission for each class of service provided by Tampa Electric Company to its various customers within its service area. At such hearing the commission will expect to receive evidence from the company and from such of its industrial, commercial, and residential customers as may be able to and will give testimony of a factual nature that may be helpful to the commission in finding a just and fair solution to this matter. At the hearing to be held on March 15, 1961, the commission will not permit any parade of witnesses for the purpose of stating simply that they object to or favor the order entered by the commission on December 29, 1960.

This is in the nature of a preliminary notice of hearing given at this time so that all interested parties may have ample time to

prepare their testimony for the hearing to be held on March 15, 1961. The time for filing petitions for rehearing with reference to order #3078 has already expired and no further pleadings are necessary in this proceeding. When necessary arrangements have been made for a suitable place where the March hearing may be held a simple notice of hearing will be issued and given the widest possible circulation and said notice will contain special rules which will govern the conduct of said hearing. A copy of the notice will be mailed to every person who has communicated with the commission about this matter and to all who request a copy thereof prior to March 1, 1961.

Now, therefore, in consideration thereof, it is ordered that all informal requests for a rehearing in this matter which may have been included in some letter or otherwise are denied. It is further ordered by the commission, on its own motion, that a public hearing be held in this docket in the city of Tampa, commencing at 9:30 A.M., March 15, 1961, at a location in said city to be announced, for the purpose of hearing and considering such relevant evidence as may be offered by any interested persons on the question whether the commission should reconsider order #3078 entered herein on December 29, 1960, and, if so, what level of rates should be approved by the commission for each class of service provided by Tampa Electric Company to its various customers within its service area. It is further ordered that the subsequent notice of said hearing will designate the specific location in the city of Tampa where the hearing will be held, and will also prescribe special rules to govern the conduct of the hearing.

*Notice, March* 6, 1961: Notice is hereby given that pursuant to order #3078-A the Florida Railroad & Public Utilities Commission will hold a public hearing commencing at 9:30 A.M., Wednesday, March 15, 1961, in the auditorium in the County Court House in Tampa, Florida, for the purpose of hearing and considering such relevant evidence as may be offered by any interested party on the question of whether the commission should reconsider order #3078, entered herein on December 29, 1960, and if so, what level of rates should be approved by the commission for each class of service provided by Tampa Electric Company to its various customers within its service area.

The following rules of practice and procedure will govern the conduct of said hearing —

1. The hearings will begin each morning at 9:30 o'clock, and will close each evening at 5 o'clock. The noon recess will be from 12 noon to 1:30 o'clock.

2. When the hearing is first convened on Wednesday, March 15, the commission's general counsel will outline briefly the history of this case and the issues involved.

3. After the commission's general counsel has made his statement, the commission will receive the appearances of all those who desire to take part in the hearing solely in a representative capacity. This simply means that, at this time, there will be entered in the record of the proceedings the name and addresses of those, such as lawyers, who represent some other party or group having an interest in the case. It will not be necessary, or appropriate, for such an appearance to be entered by any one desiring simply to testify as a witness.

4. After the appearances have been entered, the commission will hear first from those who participated in the prior hearing in this matter which was held in Tampa on December 7, 1960. This means that the commission will hear first from Tampa Electric Company, the phosphate interests, the Tampa Chamber of Commerce, and Florida Portland Cement Company, for they were the only ones who participated in the first hearing. These four interests will be permitted to make a formal statement of their position with reference to testimony already offered by them, and present additional testimony, if they so desire, and deem it necessary.

5. After the electric company, the phosphate interests, the chamber of commerce, and the cement company have concluded their presentation, the commission will then hear from any groups and individuals that are opposed to the rate adjustment authorized by the commission in its order, which was issued in this matter December 29, 1960. The testimony of any such groups or individuals must be of a factual nature and must give the reasons for their opposition. Witnesses will not be allowed to state merely that they do not like the order, or that they are opposed to it, or that they think it is wrong. Such objections must be supported by reasons that can properly be considered by the commission.

6. After the protesting groups and individuals have been heard, the commission will hear from any groups and individuals who are supporting the commission's order of December 29, 1960. However, this group of witnesses will be bound by the same rules as the opposing groups and individuals. Their approval of the commission's order must be supported by reasons that can properly be considered by the commission.

7. After the foregoing groups and individuals have testified, the electric company, the phosphate interests, the chamber of

commerce, and the cement company will be heard in rebuttal, if they so desire.

8. All parties are reminded that hearings before the commission are conducted under the same rules of evidence which apply in the circuit court. Such hearings are not town hall meetings. Testimony is given only from the witness stand, under oath, and is subject to cross-examination. Demonstrations, for or in opposition to commission action, are not allowed, and interrogation of witnesses is allowed only by those appearing in a representative capacity, whose appearances have been duly entered in the record.

9. When the testimony of either side reaches the point where it is primarily cumulative and repetitious, that is, when it adds nothing new to the record, the commission will in the exercise of its discretion discontinue further testimony of that character.

10. These rules of practice and procedure are intended to insure that these hearings will proceed in an orderly manner, and as expeditiously as possible so that everyone having an interest in this matter will have an opportunity to be heard, if he or she has any relevant evidence to offer which will be helpful to the commission in arriving at a fair and reasonable decision in this case.

*Order, April 19, 1961:* After notice and a public hearing, which was held in the city of Tampa on December 7, 1960, this commission entered order #3078 herein on December 29, 1960. In said order the commission found that the rates and charges of Tampa Electric Company which were approved by the commission on September 21, 1959 were unjustly discriminatory against the utility's large-use customers and should be vacated, and that the rates previously proposed by Tampa Electric on July 14, 1959, and now supported by a cost-to-serve study, should be approved as fair, just and reasonable rates to be charged by said utility for service to its various customers. The new rates had the effect of reducing the large-use industrial rates and increasing the residential and small-use commercial rates. The increase authorized in residential rates was approximately 3 percent or 30 cents on an average bill of ten dollars. Order #3078 explained the basis for the rate adjustment in considerable detail and it would serve no useful purpose to review the principles involved in that decision. It is sufficient for the purpose of this order to state that the rate adjustment authorized by the commission was supported by a cost-to-serve study prepared by an engineering firm which enjoys an outstanding national reputation for ability and reliability. We found the proposed rates to be fair, just, reasonable and compensatory based upon said cost-

to-serve study — and that is the statutory duty of this commission, to fix fair, just, reasonable and compensatory rates and charges for public utility services.

Shortly after the commission issued its order #3078 it received many letters objecting to the rate adjustment and urging the commission to rescind its order. The commission felt then, as it feels now, that the public is entitled to be fully heard on all matters affecting the rates and charges they must pay for public utility service and, since the public did not appear at the first hearing, the commission determined that it would hold another public hearing in Tampa for the purpose of giving the public an opportunity to present its views on why the commission should reconsider its prior order. The further hearing was held in Tampa commencing at 9:30 A.M., March 15, 1961, and was well attended by members of the public. At said hearing which lasted for two days the commission gave everyone present, who desired to be heard, an opportunity to present his or her views.

The commission was impressed particularly with one thing which was developed at said hearing. For the most part, the objections seemed to be directed at what was termed "the principle of the matter" and not at the *reasonableness* of the rates and charges which had been proposed by the Tampa Electric Company in July 1959, but which had not been approved by the commission until December 29, 1960 because they had not been supported previously by a cost-to-serve study from which the commission could determine the fair share of costs to be assigned to the utility's various classes of customers. Many of those who testified at the hearing in March stated on the witness stand that they were not concerned with the small increase in their electric bills but they did object to the "principle" involved, that is, reducing the rates of large users and increasing the rates of small users. But the ultimate test of the validity of the commission's order is the reasonableness of the rates which result from that order. Nothing was presented to the commission which raises any doubt as to the reasonableness of the rates which the commission approved in December 1960 by order #3078.

At the hearing in March the City of Plant City moved the commission to grant a rehearing in this matter on the ground that the notice of the December 7th hearing was inadequate to give the public a clear understanding of the issues involved at that hearing. During the course of the latest hearing the attorney representing said city asked each public witness if he or she knew about the first hearing and, if not, would they have appeared had they known. But the city failed to take advantage of the fact that such person was then and there on the witness

stand and was being given an opportunity to testify to anything that he or she might have testified to at the first hearing had they been present. Further, the city failed to offer any explanation for its own failure to attend said hearing although its mayor and its attorney were both served with notice of said hearing. Finally, the city while requesting a rehearing in the matter offered no information concerning what it would expect to accomplish by such a hearing or what evidence it would be prepared to present bearing upon the issues in this case.

Based upon the record herein, the commission finds that no grounds have been advanced or presented to the commission which would justify it in vacating its prior order or in holding any further hearings in this matter. The commission further finds that the motion of the City of Plant City for a rehearing herein is without merit and should be denied. Finally, the commission finds that the rates and charges authorized and approved by its prior order #3078, dated December 29, 1960, are fair, just, reasonable and compensatory and should not be vacated.

It is therefore ordered that commission order #3078 entered herein on December 29, 1960, be and the same is hereby approved and reaffirmed and all requests pending before the commission for reconsideration of said order and for a further hearing in this matter be and the same are hereby denied.

It is further ordered that the rates and charges authorized and approved by said order #3078 be and said rates are hereby reaffirmed as just, fair, reasonable and compensatory rates to be charged by Tampa Electric Company for electricity furnished to its various classes of customers and any and all requests now pending before the commission for reconsideration or reduction of said rates or any of them as a result of this proceeding be and said requests are hereby denied.